**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re LAURIE PACE, ) | Case No. 08-61759-LYN |
| ) | |
| Debtor. ) | Chapter 12 |
| ) | |

## MEMORANDUM and ORDER

This matter comes before the court on a motion by Laurie Pace ("the Debtor") to avoid the judgment lien of Robert F. McLoone ("Mr. McLoone"). Mr. McLoone asserts that the lien may not be avoided.

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A)&(K). This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

*Facts*

In October of 2004, the Debtor owned real property commonly known as 6343 Louisa Road, Keswick, Virginia ("the Real Property"). For purposes of this dispute, the parties agree that the Real Property has a fair market value of $1,095,000.00. They further agree that it is encumbered by a first deed of trust in the approximate amount of $981,000.00 in favor of Washington Mutual Bank.

1

On October 29, 2004, the Debtor executed a promissory note ("the Promissory Note") in favor of Mr. McLoone in which she agreed to pay Mr. McLoone $60,000.00 at a yearly interest rate of 10%. The Promissory Note provided that the Debtor would pay Mr. McLoone $60,000.00 if she obtained refinancing on the debt secured by the Real Property in the amount of $150,000.00 or more or obtained a line of credit in the amount of $150,000.00 or more.

Mr. McLoone asserts that the Debtor promised to attempt to obtain the financing. He further asserts that he agreed to act as a surety on the loan. Mr. McLoone also asserts that the Debtor agreed to give him a lien on the Real Property if she did not acquire a home equity loan. The Debtor was unable, or unwilling, to finalize the home equity loan. On October 26, 2004, the Debtor executed a quitclaim deed ("the Quitclaim Deed") transferring her interest in the Real Property to Mr. McLoone. On or about February 22, 2005, Mr. McLoone recorded the Quitclaim Deed. He asserts that he did so to give any creditor contemplating a loan to the Debtor a reason to take his credit history into consideration. The Debtor asserts that the recording of the Quitclaim Deed constituted a fraudulent act.

Thereafter, the Debtor filed a complaint ("the Circuit Court Complaint") in the Circuit Court for the County of Albemarle, Virginia ("the Circuit Court") asserting an ownership interest in the Real Property. On May 10, 2005, the Debtor filed a lis pendens with the Clerk of the Circuit Court recording the litigation over title to the Real Property.

On July 8, 2005, the Circuit Court issued a decree ("the Circuit Court Decree") authorizing the Debtor to sell the Real Property and ordering her to pay Mr. McLoone $60,000.00 (plus up to $22,500.00 in interest) from the proceeds upon the sale of the Real Property. The Circuit Court Decree also directed Mr. McLoone to quitclaim his interest in the

Real Property to the Debtor if she paid him the $82,500.00. The Debtor never paid Mr. McLoone any of the $60,000.00.

In or about June of 2005, the Debtor executed a note ("the Oprison Note") in favor of Richard Oprison, Sr., in the approximate amount of $40,000.00. The Oprison Note was recorded with the Clerk of the Circuit Court on June 28, 2005. On July 6, 2005, the Debtor executed a note ("the Dorsey Note") in favor of William H. Dorsey in the approximate amount of $61,000.00. The Dorsey Note was recorded with the Clerk of the Circuit Court on June 28, 2005. There are at least $15,000.00 in other perfected liens that attached to the Real Property after May 10, 2005 and before August 9, 2007.

On August 9, 2007, the Circuit Court let issue an order (1) invalidating and rescinding the Quitclaim Deed; (2) awarding judgment in favor of Mr. McLoone and against the Debtor in the amount of $60,000.00 plus interest at the rate of 10% per annum from October 29, 2004; and (3) ordering the Debtor to file the original of the Promissory Note with the Clerk of the Court within five days of the date of the order. The judgment was recorded with the Clerk of the Circuit Court.

On July 31, 2008, the Debtor filed the above-styled petition. On August 18, 2008, she filed the instant motion to avoid the lien of Mr. McLoone.

**Discussion.**

The motion to avoid the lien of Mr. McLoone is brought under Section 522(f)(1)(A) of the Bankruptcy Code, which provides:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–

3

>  (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5); . . .

Whether a lien impairs an exemption is determined by the formula provided in Section 522(f)(2)(A):

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
>   (I) the lien;
>   (ii) all other liens on the property; and
>   (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

If Mr. McLoone's lien was perfected before the Oprison Note and the Dorsey Note, then his claim has priority over all liens[1] against the property except that of Washington Mutual. If the perfection of Mr. McLoone's lien on the Real Property relates back to February 22, 2005, the date on which he recorded the Quitclaim Deed, or to May 10, 2005, the date on which the Debtor filed the lis pendens, then it is senior to the liens of Oprison and Dorsey and the Debtor may not avoid it.[2]

Mr. McLoone argues, among other things, that the lien relates back to the date of the filing of the lis pendens. In order to consider this argument it is first necessary to ascertain the purpose and effect of the filing of a lis pendens. A lis pendens serves to provide third parties of the pendency of a lawsuit, the subject of which is certain real property.

> "The effect of filing a lis pendens is to give notice of a pending suit to third parties." 1-37 Michie's Va. Jurisprudence on Real Estate § 2; see also Hart v. United Va. Bank (In re Hart), 24 B.R. 821, 824 (Bankr.E.D.Va.1982) (questioned on other grounds) ("A

---

[1] This statement does not apply to liens not referenced in this memorandum.

[2] The parties agree that the lien on the real property may not be avoided if the perfection of the lien relates back to the date of the filing of the lis pendens.

4

> memorandum of lis pendens is merely a notice to third parties that a claim has been asserted to the property described."); Preston's Drive Inn Rest., Inc. v. Convery, 207 Va. 1013, 154 S.E.2d 160, 163 (1967) (stating the purpose of Virginia's lis pendens statute is to "give notice to anyone who might deal with the property in the pending litigation."). Virginia Code § 8.01-268 provides the statutory authority for a party to file a lis pendens to provide notice to a subsequent party that "the action upon which the lis pendens is based seeks to establish an interest by the filing party in the real property described in the memorandum."  Va.Code Ann. § 8.01-268(B) (2007). Thus, a lis pendens only "serves to warn others that rights which they may acquire will be subject to any valid judgment entered." Bray v. Landergren, 161 Va. 699, 172 S.E. 252, 256-57 (1934) (citing Houston v. Timmerman, 17 Or. 499, 21 P. 1037 (1889)); see also Meliani v. Jade Dunn Loring Metro, LLC, 286 F.Supp.2d. 741, 745 (E.D.Va.2003) ("Once recorded, the lis pendens binds subsequent bona fide purchasers of the disputed property such that the subsequent purchaser, with or without actual notice of the lis pendens, takes subject to the outcome of the pending litigation."). One court, opining on the nature of lis pendens generally, noted that a "lis pendens has no specific separate existence apart from its basic function to advise a person who seeks to acquire an interest in property subject to a lis pendens that he will be bound by the outcome of the noticed litigation." Greenpoint Mortgage Funding, Inc. v. Schlossberg, 390 Md. 211, 888 A.2d 297, 304 (2005).
>
> The authority above establishes that a lis pendens is designed as a mechanism to provide notification to the world that pending litigation involving a particular piece of property exists, and that any interest acquired in that property is subject to the outcome of that pending litigation. Simply filing the lis pendens does not implicate the comity or cooperation of a court; rather, the filing of the lis pendens in a circuit court is a ministerial task conducted by the clerk of that court. See Va.Code Ann. § 8.01-268 (2007).

In re Loy, 380 B.R. 154, 166 (Bankr. E.D. Va 2007).

The *purpose* of the filing of a lis pendens is to give notice to third parties of pending litigation the subject of which is certain real property.   The *effect* of the filing of a lis pendens is to subject persons not party to the litigation to any judgment that may issue from that litigation. Bray v. Landergren, 161 Va. 699, 172 S.E. 252, 256-57 (1934) (citing Houston v. Timmerman, 17 Or. 499, 21 P. 1037 (1889) ( A lis pendens "serves to warn others that rights which they may acquire *will be subject to any valid judgment entered*.") (Emphasis added.)).  Any lien acquired after the filing of the lis pendens on May 10, 2005, is subject to the August 9, 2007, judgment and junior to the lien interest of Mr. McLoone.  Consequently, the Debtor may not avoid his

5

lien.

Nor is it relevant that it was the Debtor and not Mr. McLoone that filed the lis pendens. The notice was effective regardless of who filed it; the resulting effect must hold. To require Mr. McLoone to file a duplicate lis pendens would only serve to complicate the law, and complicate the application of the law, without serving any further legal purpose.

For the foregoing reasons, the Debtor's motion to avoid the lien of Robert McLoone will be denied.

## **ORDER**

The Debtor's motion to avoid the judicial lien of Robert McLoone shall be and hereby is denied.

So ORDERED.

Upon entry of this Memorandum and Order the Clerk shall forward a copy to Andrew S. Goldstein, Esq., and Marshall M. Slayton, Esq., and the chapter 12 trustee.

Entered on this 23rd day of February, 2009.

_____
William E. Anderson
United States Bankruptcy Judge